# In the United States Court of Federal Claims

Nos. 26-401 & 26-425 (Consolidated)
(Filed: May 29, 2026)
(Reissued: June 3, 2026)[1]

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

INTERNATIONAL BUSINESS SALES & SERVICES CORPORATION,

       *Plaintiff*,

v.

THE UNITED STATES,

       *Defendant*,

and

@ORCHARD, LLC,

       *Defendant-Intervenor*.

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

FISH AND LYNKER OCEAN ALLIANCE TEAM PARTNERS LLC,

       *Plaintiff*,

v.

THE UNITED STATES,

       *Defendant*.

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

---

[1] This opinion was initially filed under seal to afford the parties an opportunity to propose appropriate redactions. The parties represented that they had no redactions. This opinion thus appears in full.

*Jon D. Levin*, Huntsville, AL, for plaintiff, International Business Sales & Services Corporation, and for consolidated plaintiff, Fish and Lynker Ocean Alliance Team Partners LLC.

*Olivia L. Lynch*, Washington, D.C., for defendant-intervenor, @Orchard, LLC, with whom were *Cherie J. Owen*, *James G. Peyster*, and *Issac D. Schabes*, of counsel.

*William J. Grimaldi*, Assistant Director, United States Department of Justice, Commercial Litigation Branch, Civil Division, Washington, D.C., with whom were *Brett A. Shumate*, Assistant Attorney General, and *Patricia M. McCarthy*, Director, for defendant. *Lauren Williams*, Deputy Chief, and *Andrew Parker Frank*, Attorney, Office of General Counsel, US Department of Commerce, of counsel.

## OPINION

BRUGGINK, *Senior Judge*.

Pending in these consolidated, post-award bid protests are the government's and @Orchard, LLC's ("@Orchard") motions to dismiss in their entirety the claims of plaintiff International Business Sales & Services Corporation ("IBSS") and consolidated plaintiff Fish and Lynker Ocean Alliance Team Partners LLC ("FLOAT").

## BACKGROUND[2]

The solicitations at issue are (1) RFP No. 1305M423RNAAA0011 ("ProTech 2.0 Oceans") and (2) RFP No. 1305M423RNFFK0006 ("ProTech 2.0 Fisheries"), both issued by the United States National Oceanic and Atmospheric Administration ("NOAA"). IBSS Compl. ¶ 1. Both ProTech 2.0 Oceans and ProTech 2.0 Fisheries were small business set-aside solicitations providing for multiple-award, indefinite delivery indefinite quantity ("IDIQ") contracts with one five-year base period and one five-year option. *See id.* at ¶¶ 10, 13. The two solicitations used the same evaluation criteria, including corporate experience and past performance. *Id.* at ¶ 15. NOAA intended ProTech 2.0 Oceans to "obtain services for scientific data collection and stewardship, geospatial mapping of coastal areas, and

---

[2] Unless otherwise indicated, these facts are drawn from the complaints. They are not in dispute.

2

community outreach services to position America's coastal communities for the future." *Id.* at ¶ 11. NOAA intended ProTech 2.0 Fisheries to "acquire national and international fishery management support, marine observations, environmental data collection, ecosystem studies, associated data and information services, and various impact analyses for science-based conservation and management of fishing communities." *Id.* at ¶ 12.

Prior to the issuance of the solicitations, the Small Business Administration ("SBA") approved a mentor-protégé agreement between IBSS (as the large business) and @Orchard (as the small). *Id.* at ¶ 9. From there, IBSS and @Orchard then created 1stMission LLC ("1stMission")—a separate legal entity—as a mentor-protégé joint venture to pursue Federal contracts together. *Id.* To that end, 1stMission submitted proposals for both ProTech 2.0 Oceans and ProTech 2.0 Fisheries, *id.* at ¶ 18; however, neither IBSS nor @Orchard submitted proposals in their individual capacities. IBSS provided all of the corporate experience and past performance examples for 1stMission's proposals. *Id.* at ¶¶ 19–20. FLOAT submitted a proposal for only the ProTech 2.0 Fisheries solicitation. FLOAT Compl. ¶ 15.

After the proposals but before the contract awards, IBSS and @Orchard had a falling out and informed the SBA that the mentor-protégé relationship between IBSS and @Orchard was no longer viable. IBSS Compl. ¶ 21. This led the SBA to terminate the mentor-protégé relationship between IBSS and @Orchard. *Id.* at ¶ 22. Still before the contract awards, and through correspondence with NOAA, IBSS informed NOAA that the SBA had dissolved the mentor-protégé relationship between IBSS and @Orchard and that IBSS would not perform under any potential contract award to 1stMission. *See id.* at ¶¶ 22–26. Nevertheless, NOAA awarded the 1stMission joint venture a ProTech 2.0 Fisheries contract on February 26, 2024, and a ProTech 2.0 Oceans contract on April 12, 2024. *Id.* at ¶ 27.[3] Although the mentor-protégé agreement was severed, the 1stMission joint venture as an entity still existed at the time of the contract awards and was not dissolved until mid-2025. *Id.* at ¶ 30. FLOAT received an award under the ProTech 2.0 Fisheries solicitation. FLOAT Compl. ¶ 15.

Following the contract awards, IBSS contacted NOAA to reiterate that "1stMission would not be able to perform the contract in the manner stated in its proposal" because IBSS would no longer be participating due to

---

[3] The total number of awardees under the ProTech 2.0 Fisheries and ProTech 2.0 Oceans solicitations was twenty-three and eighteen, respectively.

the termination of the mentor-protégé relationship between IBSS and @Orchard. IBSS Compl. ¶ 28. And when NOAA later made task order awards to 1stMission after the dissolution of 1stMission as an entity, IBSS again contacted NOAA and sought an explanation as to how a non-entity could receive task orders. *Id.* at ¶¶ 30–32. IBSS also reminded NOAA that IBSS provided the entirety of 1stMission's experience, past performance, and technical knowhow. *Id.* at ¶ 32. Later, NOAA "novated" 1stMission's task orders to @Orchard, citing to 13 CFR § 125.9(h) as the basis for this decision. *Id.* at ¶¶ 34, 36. According to the government, after IBSS and FLOAT submitted their pre-filing notices on January 8, 2026, NOAA "reviewed its novations of the 1stMission/@Orchard contracts" and "determin[ed] that the novations inaccurately referenced 13 C.F.R. 125.9(h) rather than FAR Subpart 42.12." Gov.'s Mot. Dismiss 6, ECF No. 32 (citing Gov.'s App. at DA14). Thus, NOAA "commenced pre-litigation corrective action" to ensure the correct regulation was followed. *Id.*

## PROCEDURAL HISTORY

IBSS and FLOAT filed their complaints on March 11 and 17, 2026, respectively. While IBSS's complaint protests the awards to 1stMission under both ProTech 2.0 Oceans and ProTech 2.0 Fisheries, FLOAT's complaint only protests 1stMission's award under ProTech 2.0 Fisheries. IBSS's and FLOAT's complaints, which are otherwise materially the same, contain two claims under a single count: (1) that "it was arbitrary, capricious, and an abuse of discretion for [NOAA] to proceed with issuing an award to 1st Mission, having been informed by IBSS that the basis of 1sMission's proposal was no longer true or valid"; and (2) that the authority NOAA invoked to justify the novation (13 CFR § 125.9(h)) is facially inapplicable, thereby rendering the novation contrary to law and itself further evidence that "the award to 1stMission was arbitrary, capricious, an abuse of discretion, and otherwise contrary to law." IBSS Compl. ¶¶ 50, 52–53; FLOAT Compl. ¶¶ 48, 50–51.

On March 13, 2026, we granted @Orchard's unopposed motion to intervene, *see* ECF No. 11, and on March 19, 2026, we ordered the consolidation of Case Nos. 26-401 (IBSS) and 26-425 (FLOAT).

On March 30, 2026, the government and @Orchard concurrently moved to dismiss IBSS's and FLOAT's complaints pursuant to Rule 12(b)(1) and (b)(6) of the Rules of the United States Court of Federal Claims ("RCFC"). This matter is fully briefed, and we heard oral argument on May

7, 2026. At the conclusion of oral argument, we briefly explained why the government's and @Orchard's motions to dismiss must be granted, and we entered an order that same day granting the respective motions to dismiss but delaying the entry of judgment until we issued this opinion more fully explaining our reasoning.

## STANDARD OF REVIEW

When presented with a Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction, we "must accept as true all undisputed facts asserted in the plaintiff's complaint and draw all reasonable inferences in favor of the plaintiff." *Gateway Dev. Comm'n v. United States*, 180 Fed. Cl. 495, 506 (2026) (quoting *Trusted Integration, Inc. v. United States*, 659 F.3d 1159, 1163 (Fed. Cir. 2011)). The plaintiff, however, "bears the burden of establishing subject matter jurisdiction and must do so by a preponderance of the evidence." *Clark v. United States*, 179 Fed. Cl. 204, 207 (2025) (citing *Alder Terrace, Inc. v. United States*, 161 F.3d 1372, 1377 (Fed. Cir. 1998)). Dismissal is required to the extent we determine we do not have subject matter jurisdiction. RCFC 12(h)(3).

"Dismissal under RCFC 12(b)(6) 'is appropriate when the facts asserted by the claimant do not entitle [the claimant] to a legal remedy.'" *Gateway Dev.*, 180 Fed. Cl. at 506 (quoting *Lindsay v. United States*, 295 F.3d 1252, 1257 (Fed. Cir. 2002)). To overcome a Rule 12(b)(6) motion, the "complaint must allege facts 'plausibly suggesting (not merely consistent with)' a showing that the plaintiffs are entitled to the relief sought." *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557, 127 (2007)). When evaluating a Rule 12(b)(6) motion to dismiss, we must "accept as true a complaint's well-pleaded factual allegations and draw all reasonable inferences in favor of the non-moving party." *Id.* (first citing *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009), then citing *Sommers Oil Co. v. United States*, 241 F.3d 1375, 1378 (Fed. Cir. 2001)). "[H]owever, we are not required to accept the asserted legal conclusions." *Am. Bankers Ass'n v. United States*, 932 F.3d 1375, 1380 (Fed. Cir. 2019) (citing *Iqbal*, 556 U.S. at 678). Applying these basic rules here requires that we dismiss both complaints.

## DISCUSSION

While the government and @Orchard make multiple arguments as to why IBSS's and FLOAT's protests of NOAA's initial award decision should

be dismissed, we focus this opinion on the argument that the complaints should be dismissed under Rule 12(b)(6) for lack of statutory standing under 28 U.S.C. § 1491(b)(1).[4] Specifically, the government and @Orchard argue that neither IBSS nor FLOAT can satisfy either prong of the "interested party" requirement of 28 U.S.C. § 1491(b)(1) as interpreted by Federal Circuit precedent. As to the novation issue, the government and @Orchard argue that novations are matters of contract administration and, thus, that we must dismiss the challenges to the novations for lack of subject matter jurisdiction under Rule 12(b)(1).

IBSS and FLOAT respond that we cannot address the statutory standing issue at this stage because standing and the merits are intertwined. FLOAT also argues that, under the reasoning of *National Air Cargo Group, Inc. v. United States*, 126 Fed. Cl. 281 (2016), it satisfies both prongs of the "interested party" requirement, and IBSS argues that it too satisfies both prongs because it was the substantive offeror on 1stMission's bid and seeks to vindicate three distinct non-trivial competitive injuries. To hold otherwise, they argue, would amount to the court endorsing a rule that effectively immunizes NOAA's alleged procurement violation from judicial review.[5] As to the novation issue, IBSS and FLOAT do not meaningfully address the government's and @Orchard's jurisdictional argument.

I.      The Statutory Standing Inquiry Is Not Intertwined with the Merits

Relying on the Federal Circuit's decision in *CACI, Inc.-Federal v. United States*, 67 F.4th 1145 (Fed. Cir. 2023), IBSS and FLOAT argue that the statutory standing and merits inquires overlap and that we are thus not able to dismiss the complaints for lack of statutory standing at this stage. We disagree.

---

[4] We thus assume without deciding that IBSS and FLOAT have Article III standing.

[5] This argument is irrelevant. The Supreme Court of the United States "has long rejected that kind of 'if not us, who?' argument as a basis for standing." *Food & Drug Admin. v. All. for Hippocratic Med.*, 602 U.S. 367, 396 (2024). Indeed, it is settled that "[t]he 'assumption' that if these plaintiffs lack 'standing to sue, no one would have standing, is not a reason to find standing.'" *Id.* (quoting *Schlesinger v. Reservists Comm. to Stop the War*, 418 U. S. 208, 227 (1974)).

In *CACI*, the Federal Circuit clarified that whether a plaintiff satisfies the "interested party" requirement is a matter of statutory standing, not subject matter jurisdiction. *CACI*, 67 F.4th at 1151. However, the circuit court's conclusion in *CACI* that this court improperly conducted a de novo determination of CACI's statutory standing does not apply here. In that case, CACI was "challenging the contracting officer's determination that [its] own bid had disqualifying deficiencies." *Id.* at 1152. In that context, the statutory standing and merits inquires overlapped because "[e]very merits issue to a bidder's qualifications is also a statutory standing issue." *Id.* Thus, the court held that

> [i]n such a situation, allowing the Claims Court to determine statutory standing de novo would be to allow the Claims Court to determine the merits de novo, when the statute and regulations clearly provide that CACI's OCI compliance is to be determined initially by the contracting officer and reviewed by the Claims Court based on the agency record and an arbitrary and capricious standard.

*Id.* at 1153. Thus, the issue in *CACI* was this court's de novo factual determinations pertaining to statutory standing when—by statute and regulation—those same factual determinations were required to be made on the merits by the contracting officer in the first instance and then reviewed by this court. *Id.*

The *CACI* decision itself clarifies that it has no application here. The Federal Circuit stated that this court "must make the statutory standing determination, i.e., whether the plaintiff is an interested party[,] . . . when the plaintiff is arguing that the contracting officer made an error in evaluating the bid of another contractor." *Id.* at 1152 (citing *Myers Investigative & Sec. Servs., Inc. v. United States*, 275 F.3d 1366, 1370 (Fed. Cir. 2002); *CliniComp Int'l, Inc. v. United States*, 904 F.3d 1353, 1359 (Fed. Cir. 2018)). Thus, as this court has said, "'when the plaintiff is arguing that the [government] made an error in evaluating the bid of *another* contractor,' a judicial determination of statutory standing is still 'required,' although it need not be made before reaching the merits." *Air Borealis Ltd. P'ship v. United States*, 167 Fed. Cl. 370, 381 (2023) (alteration in original) (quoting *CACI*, 67 F.4th at 1152). In other words, when the plaintiff is challenging the government's award of a contract to another bidder, we *must* make a statutory standing determination, and we *may* do so without reaching the merits— according to our discretion.

Here, IBSS and FLOAT are each challenging NOAA's decision to award 1stMission (another bidder) contracts under the ProTech 2.0 Fisheries and ProTech 2.0 Oceans solicitations and its subsequent decision to novate those contracts to @Orchard. Thus, under *CACI*, we are clearly required to make a statutory standing determination in this case. And, as can be seen in our discussion below, the question of whether IBSS and FLOAT satisfy the "interested party" requirement has nothing to do with the merits of their claims—i.e., whether IBSS and FLOAT are actual or prospective bidders is entirely unrelated to the questions of whether NOAA properly awarded the contracts to 1stMission and whether the novations were lawful. Therefore, we will proceed to making an initial statutory standing determination.

II.    Neither IBSS nor Float Satisfy the "Interested Party" Requirement

A.    28 U.S.C. § 1491(b)(1)'s "Interested Party" Standard

"[G]overnment procurement protestors must satisfy the standing requirements of the Tucker Act." *Island Creek Assocs., LLC v. United States*, 172 Fed. Cl. 729, 738 (2024) (citing *Wks. Marine, Inc. v. United States*, 575 F.3d 1352, 1359 (Fed. Cir. 2009)), *appeal docketed*, No. 25-1140 (Fed. Cir. argued May 5, 2026). The Tucker Act, as amended by the Administrative Dispute Resolution Act of 1996, Pub. L. No. 104-320, 110 Stat. 3870, "defines not only . . . *what* actions may be brought against the government, but also *who* has standing to pursue them." *Aero Spray, Inc. v. United States*, 156 Fed. Cl. 548, 559 (2021).

In terms of *who* has standing, the Tucker Act allows only an "interested party" to bring an "action" in this court "objecting [1] to a solicitation by a Federal agency for bids or proposals for a proposed contract *or* [2] to a proposed award *or* [3] the award of a contract *or* [4] any alleged violation of statute or regulation in connection with a procurement or a proposed procurement." *Id.* (alterations in original) (quoting 28 U.S.C. § 1491(b)(1)). While 28 U.S.C. § 1491(b)(1) does not define "interested party," the Federal Circuit has interpreted the term to carry the same meaning as is in the Competition in Contracting Act of 1984 ("CICA"). *AFGE, Local 1482 v. United States*, 258 F.3d 1294, 1302 (Fed. Cir. 2001). CICA defines "interested party" as "an actual or prospective bidder or offeror whose direct economic interest would be affected by the award of the contract or by failure to award the contract." 31 U.S.C. § 3551(2). Accordingly, to be an "interested party" under 28 U.S.C. § 1491(b)(1) and thus establish statutory standing, a protestor must "establish that it (1) is an actual or prospective

bidder, and (2) possesses the requisite direct economic interest." *Rex Serv. Corp. v. United States*, 448 F.3d 1305, 1307 (Fed. Cir. 2006). Because we hold that neither IBSS nor FLOAT satisfy the first prong of the "interested party" inquiry, we do not address the second prong.

B.    IBSS Is Not an "Interested Party"

IBSS is not an "interested party" under 28 U.S.C. § 1491(b)(1) because it is plainly not an actual or prospective bidder. To begin with, it is undisputed that IBSS did not submit, and indeed could not have submitted, a proposal in its own capacity under either the ProTech 2.0 Fisheries or ProTech 2.0 Oceans solicitations because, as a large business, it was ineligible for both. *See* Oral Arg. Tr. 13–14, May 7, 2026 (IBSS conceding this point). The fact that it was a constituent part of the joint venture which did submit a bid is immaterial.  Frankly, our inquiry ends there.

To escape this straightforward analysis, however, IBSS argues that although 1stMission was the entity that submitted the bids, we should look past that technicality and consider IBSS the "substantive offeror." Pls.' Resp. 19, ECF No. 36. In doing so, IBSS argues that the Federal Circuit's decision in *Percipient.Ai, Inc. v. United States*, 153 F.4th 1226 (Fed. Cir. 2025), is inapplicable here because that case dealt with subcontractors, not mentor-protégé JVs. This argument misses the point. The court in *Percipient.Ai* did not pronounce any new rule. Rather, the court stressed that there was no reason to depart from the "settled interpretation" that "interested party" status is "limited to actual or prospective bidders or offerors whose direct economic interest would be affected by the award of the contract or by failure to award the contract."[6] *Id.* at 1235. In other words, the court merely reaffirmed the long-standing rule that "interested party" status is limited to "*disappointed*

---

[6] Indeed, the court in *Percipient.Ai* granted *en banc* review on the following question: "Who can be 'an interested party objecting to . . . any alleged violation of statute or regulation in connection with a procurement or a proposed procurement' under 28 U.S.C. § 1491(b)(1)?" *Percipient.Ai*, 153 F.4th at 1230. Thus, the main issue in *Percipient.Ai* was whether "interested party" carried different definitions "depending on how a claimant chooses to style or bring its claim." *Id.* at 1235. The Federal Circuit rejected that notion and instead made clear that its longstanding definition of "interested party" applied regardless of how a claimant styles its claim under 28 U.S.C. § 1491(b)(1).

*bidders*." *Id.* From there, the conclusion that subcontractors are not "actual or prospective bidders" flowed naturally.

Thus, from the Federal Circuit's 2001 decision in *AFGE* to its decision in *Percipient.Ai* last year, the "interested party" rule has remained the same. Under that rule, no party is an "interested party" if they are not an actual or prospective bidder. Here, it was 1stMission—not IBSS—that bid on, and received awards under, the ProTech 2.0 Fisheries and ProTech 2.0 Oceans solicitations. We cannot ignore the fact that IBSS is *not* 1stMission. Regardless of whether IBSS provided the "substance" of *1stMissions*'s proposals, one thing is clear: IBSS is not an actual or prospective bidder. Therefore, IBSS does not have statutory standing under 28 U.S.C. § 1491(b)(1) and has thus failed to state a claim upon which relief can be granted.

### C.    FLOAT Is Not an "Interested Party"

Nor is FLOAT an "interested party" under 28 U.S.C. § 1491(b)(1). It is also not an actual or prospective bidder, albeit for a different reason. Unlike IBSS, FLOAT did submit a bid (and received an award) under the ProTech 2.0 Fisheries solicitation. That is not enough, however. As we explain below, we concur with Chief Judge Solomson's reasoning in *Aero Spray* that, in the post-award context, a protestor must be an actual bidder "'with respect to a contract' award that is the subject of the objection." *Aero Spray*, 156 Fed. Cl. at 565 (quoting 31 U.S.C. § 3551(1)(C)).

In interpreting the meaning of "interested party" under 28 U.S.C. § 1491(b)(1), the Federal Circuit imported the definition of that phrase from CICA. As we noted earlier, CICA defines "interested party" as "an actual or prospective bidder or offeror whose direct economic interest would be affected by the award of the contract or by failure to award the contract." 31 U.S.C. § 3551(2)(A). Critically, however, CICA defines "interested party" only "with respect to a contract or a solicitation or other request for offers described in paragraph (1)." 31 U.S.C. § 3551(2)(A). Paragraph (1) then defines "protest" as "a written objection by an interested party to," among other things not pertinent here,

> (A) A solicitation or other request by a Federal agency for offers for a contract for the procurement of property or services.

> (B) The cancellation of such a solicitation or other request.

       (C) *An award or proposed award of such a contract.*

*Id.* at § 3551(1) (emphasis added). Based on this statutory framework, we agree with the court in *Aero Spray* that whether a party is interested—and therefore whether a party is an actual or prospective bidder—"depends on the nature of the 'objection.'" *Aero Spray*, 156 Fed. Cl. at 565.

       Because we are not dealing with "a solicitation-related protest, the term 'prospective' is not relevant here, as it applies to a timely solicitation challenge filed before proposals are due." *Id.* (citing *Wks. Marine*, 575 F.3d at 1361–63). Rather, because FLOAT challenges the award of a ProTech 2.0 Fisheries contract to 1stMission, FLOAT must have been an actual bidder for that contract award in order to be an "interested party." Thus, as Chief Judge Solomson stated in *Aero Spray*, "[t]he question . . . is *not* whether [FLOAT] is (or, more accurately, *was*) an 'actual . . . offeror' *generally* for the procurement at issue, but rather whether [FLOAT] was an actual offeror 'with respect to a contract' award that is the subject of the objection." *Aero Spray*, 156 Fed. Cl. at 565 (quoting 31 U.S.C. § 3551(1)–(2)). But "in a multiple award procurement *where an offeror receives the very contract it sought*—i.e., the only contract for which it submitted a proposal—that offeror cannot be considered an 'actual offeror' with respect to the other contract awards it did not seek (and, indeed, could not have sought)." *Id.* at 566. Thus, like the court in *Aero Spray*, we conclude that FLOAT, "having received a contract award for all that it proposed, was not, and is not, an actual offeror 'with respect to'" 1stMission's contract award. *Id.* at 565.[7]

---

[7] This is in line with the general rule that "[o]nce a party becomes an awardee, they are no longer an 'interested party' with standing to bring a bid protest claim under 28 U.S.C. § 1491(b)." *Aero Spray*, 156 Fed. Cl. at 566 (quoting *Looks Great Servs., Inc. v. United States*, 145 Fed. Cl. 324, 328 (2019)); *see also*, *e.g.*, *L3 Techs., Inc. Commc'ns Sys-W. v. United States*, 161 Fed. Cl. 35, 50–51 (2022) (articulating and applying the general rule). This general rule properly applies in the multiple award, IDIQ contract context where, as here, there is no allegation that "the contemplated multiple awards cover different performance scopes or have materially different features (e.g., different geographical regions, services, or funding ceilings)." *Id.* at 565. Indeed, applying the general rule to a plaintiff who received the exact award it sought under a multiple award, IDIQ solicitation—specifically when there is no allegation that the awarded contract in any way differs from those available and those given to other awardees—perfectly aligns with the

Opposing this analysis, FLOAT argues that we should instead adopt Judge Lettow's reasoning in *National Air Cargo*. In that case, much like this one, the plaintiff, which had been awarded a contract under a multiple award, IDIQ solicitation, challenged the award of a contract to another party as well. *Nat'l Air Cargo*, 126 Fed. Cl. at 285–88. Relying primarily on *Systems Application & Technologies, Inc. v. United States*, 691 F.3d 1374 (Fed. Cir. 2012) and *RAMCOR Services Group, Inc. v. United States*, 185 F.3d 1286 (Fed. Cir. 1999), Judge Lettow held that the plaintiff was "an 'actual' bidder because, as a matter of fact, it bid on [the] IDIQ solicitation." *Nat'l Air Cargo*, 126 Fed. Cl. at 295.

In addition to our analysis above of 28 U.S.C. § 1491(b)(1) (and thus CICA's definition of "interested party") counseling against such an approach, there are at least two additional reasons to reject Judge Lettow's reasoning in *National Air Cargo*. First, *National Air Cargo*'s reliance on *Systems Application* and *RAMCOR* on this point is odd given that the question of whether the actual bidder requirement was satisfied was not at issue in either case. *Sys. Application*, 691 F.3d at 1382 (noting that the "actual or prospective bidder" requirement was not in dispute and, therefore, analyzing only the "direct economic interest" requirement); *RAMCOR*, 185 F.3d at 1289 (noting that the question before the court was "whether an objection to a [31 U.S.C.] § 3553(c)(2) override can serve as a jurisdictional basis under § 1491(b)(1)" which, "in turn, require[d] [the] court to determine whether § 3553(c)(2) is a statute 'in connection with a procurement,' as required by § 1491(b)(1)"). Second, we agree with the court's conclusion in *Aero Spray* that "*RAMCOR* addresses *what* a § 1491(b) action may include but does not define *who* qualifies as 'an actual or prospective bidder or offeror' or otherwise meets the remaining elements of an 'interested party.'" *Aero Spray*, 156 Fed. Cl. at 573. These are separate questions. By relying on *RAMCOR*, *National Air Cargo* improperly conflated the question of *what* actions can be brought under 28 U.S.C. § 1491(b) with the question of *who* can bring such actions; thus, we do not adopt *National Air Cargo*'s reasoning.

In sum, we agree with the court in *Aero Spray* that we "must look to the contract award that is the subject of the protest and ask whether the plaintiff is an actual, but disappointed, offeror *for that award*." 156 Fed. Cl. at 567. FLOAT, having received the award for which it bid, is of necessity

---

Federal Circuit's clear interpretation of "interested party" as being limited to *disappointed bidders*. *Percipient.Ai*, 153 F.4th at 1235.

neither an actual nor disappointed offeror for 1stMission's contract award. Therefore, FLOAT is not an "interested party" and thus lacks statutory standing to bring this protest. Accordingly, FLOAT has also failed to state a claim upon which relief can be granted.

III.     We Do Not Have Jurisdiction Over Novation Claims

To the extent IBSS and FLOAT challenge the novations, those claims must be dismissed for lack of jurisdiction. "This Court has consistently held that 'matters of contract administration—including matters of contract performance—fall beyond the Court's bid protest jurisdiction.'" *Huffman Bldg. P, LLC v. United States*, 152 Fed. Cl. 476, 485 (2021) (quoting *Relyant Glob., LLC v. United States*, 146 Fed. Cl. 817, 823 (2020), *vacated as moot*, No. 2020-1526, 2021 U.S. App. LEXIS 6704, at *1–*2 (Fed. Cir. Feb. 1, 2021)). As this court has stated, contract novations "are matters routinely handled as a part of contract administration and clearly do not fall outside the changes clause or amount to a new procurement." *DynCorp Int'l LLC v. United States*, 152 Fed. Cl. 490, 504 (2021) (citing *AT&T Commc'ns, Inc. v. Wiltel, Inc.*, 1 F.3d 1201, 1205 (Fed. Cir. 1993)). Here, IBSS and FLOAT directly challenge the novations of 1stMission's contracts to @Orchard, but they offer no reason as to why these novations fall outside the changes clause or amount to a new procurement. Indeed, in their briefing, IBSS and FLOAT did not even respond to the government's and @Orchard's arguments on this point. Therefore, we do not have jurisdiction over IBSS's and FLOAT's novation claims under 28 U.S.C. § 1491(b). Those claims are thus dismissed under Rule 12(b)(1) for lack of jurisdiction.

CONCLUSION

For the reasons stated above, the government's and @Orchard's motions to dismiss are granted. The Clerk of Court is directed to enter judgment in Case Nos. 26-401 and 26-425 accordingly. No costs.

s/Eric G. Bruggink
ERIC G. BRUGGINK
Senior Judge

13